# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## NO. 3:20-CV-00203-FDW-DCK

| | |
|---|---|
| SOUTHEASTERN PUBLIC SAFETY GROUP INC., **Plaintiff,** v. RANDY MUNN NORTH CAROLINA CRIMINAL JUSTICE EDUCATION AND TRANING STANDARDS COMMISSION ADAM TRANUM RICHARD SQUIRES CAPITAL SPECIAL POLICE, LLC CHRISTY THAXTON, **Defendants.** | <u>ORDER</u> |

THIS MATTER is before the Court on Defendants' Motions to Dismiss. Defendant Christy Thaxton ("Defendant Thaxton") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Doc. No. 24). Defendants Adam Tranum ("Defendant Tranum") and Capitol Special Police, LLC ("Defendant CSP") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 25). Defendants Randy Munn ("Defendant Munn"), Richard Squires ("Defendant Squires"), and North Carolina Criminal Justice Education and Training Standards Commission ("Defendant Commission") filed three separate Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6); however, the Motions are identical and will be treated as one for purposes of this Order. (Doc. Nos. 35, 36, 37). All Motions have been fully briefed and are ripe for review. For the reasons stated herein, each Motion to Dismiss is GRANTED.

# I. BACKGROUND[1]

This lawsuit arises out of Plaintiff's contractual agreement to provide subcontracted, private law enforcement services for North Carolina Department of Transportation's ("NCDOT") construction project on Interstate-77 ("I-77") in the Charlotte, North Carolina area. (Doc. No. 7).

Plaintiff is a North Carolina corporation certified to provide private law enforcement services in North Carolina, "including on NCDOT construction zones." Id. at p. 4. According to the Amended Complaint, Plaintiff is the "only [United States Department of Transportation] Disadvantaged Business Enterprise ("DBE") in North Carolina authorized to provide police protection for federally funded NCDOT projects." Id. at p. 10.

In mid-2016, Plaintiff subcontracted with Sugar Creek Construction, LLC ("SCC") to provide contract law enforcement services for SCC while SCC completed construction work on the I-77 project.[2] Id. at p. 11. Specifically, the subcontract agreement required Plaintiff to provide North Carolina-certified law enforcement officers for traffic management in active construction zones. Id. at pp. 11-12. Plaintiff alleges its officers "performed [their] law enforcement services to the satisfaction of SCC and the NCDOT, without incident, for nine months." Id. at p. 14.

Plaintiff alleges that, on March 27, 2017, Defendant Adam Tranum ("Defendant Tranum"), Operations Manager of Capitol Special Police, LLC ("CSP"), "was driving on I-77" looking for "law enforcement and security contracts upon which to bid for," when Defendant Tranum noticed Plaintiff's patrol vehicle "operating in a construction lane with red and blue lights flashing." Id. at pp. 14-15. Defendant Tranum allegedly believed the operation of Plaintiff's patrol vehicle in a construction lane was a violation of N.C. GEN. STAT. § 74E, which governs company police

---

[1] The background described herein is derived from the Amended Complaint, (Doc. No. 7), and all allegations are taken as true for purposes of this Order.

[2] Sugar Creek Construction is not a party to this lawsuit.

agencies.[3] (Doc. No. 7, p. 15). Plaintiff alleges that, because Defendant Tranum works for a direct competitor of Plaintiff, CSP, Defendant Tranum emailed Defendant Randy Munn ("Defendant Munn"), the Company Police Administrator for the North Carolina Department of Justice ("NCDOJ"), to inform him of Plaintiff's alleged violation of § 74E. (Doc. No. 7, p. 15).

In his role as Company Police Administrator, Defendant Munn was allegedly responsible for investigating all possible violations of § 74E. (Doc. No. 7, p. 15). Defendant Munn allegedly commenced an investigation into Plaintiff on March 29, 2017, two days after receiving the email from Defendant Tranum. Id. During the course of his investigation, Defendant Munn allegedly contacted SCC and informed SCC that Plaintiff "could not continue to provide law enforcement services to SCC." Id. Plaintiff also alleges Defendant Munn told Plaintiff to "stop operations [at the I-77 construction zone] immediately or face suspension of its certification or 'other legal action.'" Id. at p. 16. Defendant Munn was informed that Plaintiff ceased operations on the I-77 project on March 30, 2017. Id.

Although the exact timeline is unclear from the Amended Complaint, around March 30, 2017, Defendant Munn forwarded a copy of Plaintiff's subcontracting agreement with SCC to his boss, Defendant Richard Squires ("Defendant Squires"), the Deputy Director of Recertifications for the Criminal Justice Standards Division at NCDOJ.[4] (Doc. No. 7, pp. 16-17). Plaintiff alleges the electronic forwarding of its contract with SCC was a violation of N.C. GEN. STAT. § 74E-5 and

---

[3] Elsewhere in the Amended Complaint, Plaintiff cites to 12 N.C. ADMIN. CODE 2I.0304(4)(a), which prohibits company police officers from "activating or operating a blue light in or on any vehicle in this State except when operating a motor vehicle used primarily by company . . . police in the performance of his official duties . . . when in property jurisdiction limitations specifically described under G.S. 74E-6."

[4] Plaintiff states Defendant Squires is an "agent to the Commission." (Doc. No. 7, p. 17). This characterization differs from the caption of the Amendment Complaint, which indicates that Defendant Squires is Deputy Director of Recertifications for North Carolina Criminal Justice Training Division. (Doc. No. 7, p. 1). The Amended Complaint does not clearly reconcile this inconsistency.

3

N.C. GEN. STAT. § 132-1.2(1) because neither of the statutes authorize the disclosure of "company police agency contracts with third parties." (Doc. No. 7, p. 17).

Sometime after forwarding a copy of Plaintiff's contract with SCC to Defendant Squires, Defendant Munn allegedly stated in a March 31, 2017 email to Plaintiff's CEO, Chief Williams, that Plaintiff's contract with SCC was a "clear violation of the Company Police Act." Id.; see also (Doc. No. 7-6). Plaintiff alleges it informed Defendant Munn that it ceased all work on I-77 as of "March 30, 2017." (Doc. No. 7, p. 16). Plaintiff alleges Defendant Munn then contacted SCC, without any authority to do so, and informed SCC that "Plaintiff was prohibited from impeding traffic or engaging their blue lights while on I77 [sic]." (Doc. No. 7, p. 17).

Around the same time, Defendant Munn further informed Chief Williams that Plaintiff's "law enforcement officers were restricted to working 'behind the barriers' and . . . could not work in any lanes of travel." Id. at p. 19. Plaintiff alleges Defendant Munn's "own pecuniary interests in off-duty employment" drove him to interfere with Plaintiff's contract with SCC. Id. at p. 18. Shortly thereafter, SCC allegedly "resume[d] their 'secondary employment agreements' with municipal and county law enforcement agencies" instead of continuing to work with Plaintiff. Id.

Beginning in May 2017, Defendant Munn, Plaintiff, and Assistant Attorney General Whitney Belich allegedly engaged in email conversations discussing the ownership of the relevant portions of I-77, as the ownership of I-77 would dictate whether Plaintiff was authorized to operate its blue lights under N.C. GEN. STAT. § 74-E6(2) and 12 N.C. ADMIN. CODE 2I.0304(4)(a).[5] (Doc. No. 7, pp. 20-24). At some point during the email exchanges, Assistant Attorney General Belich

---

[5] N.C. GEN. STAT. § 74-E6(2) gives company police officers the same powers as municipal and county officers to make arrests when the arrests are made on "[r]eal property owned by or in the possession and control of a person who has contracted with the employer to provide on-site company police security personnel services for the property." 12 N.C. ADMIN. CODE 2I.0304(4)(a) prohibits company police officers from operating or activating their blue lights except when operating their vehicle within jurisdictional limits described under § 74-E6.

4

allegedly expressed the opinion that SCC did not have any possessory interest in I-77 and Plaintiff would accordingly be prohibited from engaging in traffic control pursuant to the Company Police Act. Id. at p. 20.

Plaintiff alleges Defendant Munn, in at least one of his emails to Plaintiff, deliberately deleted disclaimer text informing Plaintiff that the contents of the email were neither legal advice nor the official position of the NCDOJ. (Doc. No. 7, p. 24). The alleged deletion "gave Plaintiff the false impression that [Assistant Attorney General Belich] had provided an official opinion of the NCDOJ." (Doc. No. 7, p. 24). Plaintiff alleges it believed it could no longer perform work for SCC as a result of the omitted disclaimer. Id.

However, in July of 2017, Assistant Attorney General Belich allegedly reversed course and communicated to Defendant Munn that Plaintiff *could* provide law enforcement services on I-77 as part of its agreement with SCC. Id. Plaintiff alleges Defendant Munn did not communicate this information to Plaintiff and only communicated it to Defendant Squires. Id. Plaintiff alleges it only found out about Assistant Attorney General Belich's opinion when it submitted a public records request in December 2020. Id. Plaintiff contends Defendant Munn intentionally concealed Belich's opinion "to continue to interfere with" Plaintiff and SCC's contract between July 17, 2017 and December 23, 2020. Id. Plaintiff maintains that, as a result of Defendant Munn's concealment, it contacted Shelby Scales ("Scales"), Director of NCDOT's Civil Rights Division for assistance and clarification.[6] Id. at p. 25.

Scales allegedly assigned Plaintiff's case to Defendant Christy Thaxton ("Defendant Thaxton"), the Business Opportunity and Workforce Development Manager for the NCDOT Civil Rights Division. Id. at pp. 5, 26. Defendant Thaxton allegedly discussed Plaintiff's SCC contract

---

[6] Shelby Scales is not a party to this lawsuit.

with Defendants Munn, Squires "and others" on June 11, 2018, and on June 29, 2018, Defendant Thaxton informed Plaintiff that Plaintiff could not perform contract law enforcement services for SCC on I-77. Plaintiff alleges it believed Defendant Thaxton's statement was the official opinion of the NCDOT and further contends her statement "rendered null Plaintiff's designation as a DBE, in that Plaintiff, as a direct result of the statements of Thaxton, Squires, and Munn, believed it was not legally permitted to bid on contracts to provide police protection in NCDOT Work Zones." Id.

Ultimately, Plaintiff contends Defendant Munn's "influence" has extended to other agencies, all of which have all worked in concert to interfere with "Plaintiff's ability to compete in the contract law enforcement services market." Id. at p. 27. Plaintiff alleges Defendant Munn has incorrectly advised other third parties about the laws governing company police agencies under N.C. GEN. STAT. § 74E. Id. at p. 28. According to Plaintiff, all named Defendants have "failed to correct the harm caused to Plaintiff, despite their knowledge and involvement thereof for more than three years." Id. at p. 29.

As recourse for its alleged inability to compete in the marketplace, Plaintiff has asserted the following causes of action: (1) 42 U.S.C. § 1983 violation of Plaintiff's right to equal protection against all Defendants; (2) 42 U.S.C. § 1983 violation of Plaintiff's right to procedural due process against all Defendants; (3) civil conspiracy under state law and 42 U.S.C. § 1985 against all Defendants; (4) abuse of process against Defendants Tranum and CSP; (5) tortious interference with contract against Defendants Munn, Squires, Thaxton, and Commission; (6) fraud against Defendant Munn; (7) unfair and deceptive trade practices against all Defendants; (8) alternative claims under the North Carolina Constitution against all Defendants. (Doc. No. 7).

Defendants have all filed Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or (b)(6), (Doc. Nos. 24, 25, 35, 36, 37), and all are ripe for review. The Court will address each Motion separately, below.

## II. STANDARD OF REVIEW

### a. Fed. R. Civ. P. 12(b)(1)

Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765 (4th Cir. 1991), the Court of Appeals for the Fourth Circuit held as follows:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. A district court order dismissing a case on the grounds that the undisputed facts establish a

lack of subject matter jurisdiction is a legal determination subject to *de novo* appellate review.

Id. at 768-69 (citations omitted).

### b. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when the pleading party fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal "sufficiency of a complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); accord E. Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The Supreme Court has said:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (alteration in original) (internal citations omitted) (quoting Twombly, 550 U.S. at 555-56).

8

### III.    DEFENDANT THAXTON'S MOTION TO DISMISS

In its Amended Complaint, Plaintiff asserts three causes of action specifically against Defendant Thaxton and three causes of action generally against "Defendants." (Doc. No. 1, pp. 29-35). For purposes of ruling on Defendant Thaxton's Motion to Dismiss, the Court takes the allegations contained in Plaintiff's Amended Complaint as true and assumes the following causes of action are asserted against Defendant Thaxton: (1) deprivation of equal protection and procedural due process rights under 42 U.S.C. § 1983; (2) civil conspiracy under state law and 42 U.S.C. § 1985; (3) tortious interference with contract; (4) unfair and deceptive trade practices; and (5) state constitutional violations. (Doc. No. 1, pp. 29-35). Defendant Thaxton moves to dismiss all claims against her pursuant to Fed. R. Civ. P. 12(b)(1), arguing they are barred by some form of governmental immunity, and/or pursuant to Fed. R. Civ. P. 12(b)(6) because all claims fail to plausibly allege Plaintiff is entitled to relief.  (Doc. No. 24).

### a.  Individual Capacity Claims

At the outset, the Court first determines whether Defendant Thaxton is sued in her individual and/or in her official capacity. Plaintiff sues Defendant Thaxton in both her individual capacity as well in her official capacity, (Doc. No. 7), but Defendant Thaxton maintains she is only sued in her official capacity because the allegations against her "all concern acts and omissions that occurred only within the scope of her position as manager of NCDOT's Business Opportunity and Workplace Development unit." (Doc. No. 24-2, p. 8).

For its part, Plaintiff does not dispute Defendant Thaxton's contention, but rather argues Defendant Thaxton is a public employee who is not protected by any form of governmental immunity. See (Doc. No. 27, p. 13). However, because Plaintiff provides no argument and instead offers only legal conclusions, the Court assumes Defendant Thaxton is a public official, not a mere

9

public employee, who exercises discretion in her statutorily-delegated responsibility to provide supportive services to DBEs in North Carolina.[7] See N.C GEN. STAT. § 136-28.4.

Turning now to Defendant Thaxton's unopposed argument that she is sued in only her official capacity, the Court agrees. Courts are cautioned against allowing actions "to proceed simply because the complaint names a state official in his or her individual capacity [because to do so] 'would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents.'" Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014) (quoting Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997)). When evaluating whether a suit against a State official in her individual capacity is effectively a claim against the State itself, courts must "examine *the substance* of the claims stated in the complaint." Martin, 772 F.3d at 196 (emphasis in original). The substance of the allegations in a complaint can be evaluated by questions such as:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials . . . operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interest; and (5) were the state officials' actions *ultra vires*.

Id. at 195 (internal citations and quotations omitted).

---

[7] Plaintiff cites to Farrell, ex rel. Farrell v. Transylvania Cnty. Bd. of Educ., 682 S.E.2d 224 (N.C. Ct. App. 2009) to support its argument Defendant Thaxton is a public employee. Farrell describes three characteristics that distinguish a public official from a public employee: "(1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties." 682 S.E.2d at 228. Here, North Carolina imposes a statutory duty on the NCDOT to "encourage and promote participation by" DBEs in NCDOT projects. N.C. GEN. STAT. § 136-28.4. As manager of the Business Opportunity and Workplace Development unit, Defendant Thaxton has managerial responsibility for providing supportive services to DBEs, which include services to encourage and promote the participation of DBEs. See NCDOT, Business Opportunity and Workforce Development, https://www.ncdot.gov/about-us/board-offices/offices/civil-rights/Pages/business-opportunity-workforce-development.aspx (last visited Aug. 4, 2021).

Here, the substance of the allegations contained in the Amended Complaint against Defendant Thaxton clearly indicate the action is effectively an action against the State itself. Defendant Thaxton's involvement in the matter occurred only because Defendant Thaxton was assigned to provide support services to Plaintiff as a DBE as part of Defendant Thaxton's official job responsibilities. (Doc. No. 7, p. 26). *All* of Defendant Thaxton's alleged communications with Plaintiff and/or other Defendants occurred as a result of Defendant Thaxton's responsibility to help Plaintiff navigate the marketplace as a DBE. Id. Moreover, Defendant Thaxton's allegedly wrongful acts—misstating the law to Plaintiff and removing Plaintiff from an NCDOT database— were prompted by Defendant Thaxton's understanding of the law as dictated by the NCDOJ. Id. It is clear from the face of the Amended Complaint that Defendant Thaxton's actions were taken to further the *State's* interest, not Defendant Thaxton's interests. To be sure, the Amended Complaint states Defendant Thaxton acted "outside the scope of [her] official duties," (Doc. No. 7, p. 29); however, a cursory legal conclusion is not sufficient to overcome the true substance of the claims against Defendant Thaxton—that Defendant Thaxton violated the law while carrying out her official duties. The Court accordingly finds Defendant Thaxton has been sued only in her official capacity and turns now to Defendant Thaxton's Eleventh Amendment argument.

**b. Eleventh Amendment and Sovereign Immunity**

The Eleventh Amendment generally prevents unconsenting States from being sued in federal or state court. Alden v. Maine, 527 U.S. 706, 729 (1999). Although the language of the Eleventh Amendment appears to apply to a narrow range of circumstances, "the Constitution bars suits against nonconsenting States in a wide range of cases." Franchise Tax Bd. of Ca. v. Hyatt, 139 S. Ct. 1485, 1496 (2019). Such cases include those brought pursuant to 42 U.S.C. § 1983 and § 1985. Quern v. Jordan, 440 U.S. 332, 343-45 (1979); see also Cribb v. Pelham, 552 F. Supp.

11

1217, 1220 (D.S.C. 1982) ("[T]he State . . . is [not] subject to suit under 42 U.S.C. § 1983 or 1985."). Notably, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." <u>Will v. Mich. Dept. of State Police</u>, 41 U.S. 58, 71 (1989).

Here, all claims asserted against Defendant Thaxton in her official capacity as an official within the North Carolina Department of Transportation ("NCDOT") are claims against the State of North Carolina. Thus, all claims are barred by the Eleventh Amendment against Defendant Thaxton in her official capacity unless (1) North Carolina has waived its sovereign immunity for the relevant causes of action; (2) Congress has abrogated North Carolina's immunity for the relevant causes of action; or (3), Plaintiff is seeking prospective relief against Defendant Thaxton, and Defendant Thaxton has a "special relation" to the challenged action. None of the exceptions to Eleventh Amendment immunity are present here.

First, as to waiver, Plaintiff argues it has "alleged that Thaxton and the NCDOT waived all types of immunity." (Doc. No. 27, p. 5). Plaintiff has indeed alleged waiver in its Amended Complaint:

> the NCDOJ and NCDOT have waived any governmental immunity they could have raised to the allegations in the Complaint through the purchase of liability insurance that was in effect at all relevant times or, in the alternative, the NCDOJ and NCDOT have reserved insurance funds to cover the relevant and alleged tortious acts committed by their agents and/or employees.[8]

(Doc. No. 7, pp. 5-6). Notwithstanding that this allegation is a legal conclusion, which this Court is free to disregard when evaluating the sufficiency of a complaint, none of Plaintiff's factual

---

[8] Plaintiff appears to be confusing municipal immunity with State immunity. The State of North Carolina provides that *municipalities within the State* may waive immunity in certain circumstances by purchasing liability insurance. N.C. GEN. STAT. § 160A-485. Municipalities are meaningfully different from States; notably and relevant to this Order, States are protected by the Eleventh Amendment and municipalities are not. The Court also notes that NCDOJ is not a named party to this lawsuit notwithstanding Plaintiff's allegations concerning NCDOJ.

12

allegations or argument as to waiver are sufficient to overcome the sovereign immunity afforded

to Defendant Thaxton, and North Carolina, under the Eleventh Amendment.

States may waive their Eleventh Amendment immunity "if the State voluntarily invokes

[federal] jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to

[federal] jurisdiction." Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S.

666, 675-76 (1999) (quotations and citations omitted). The Fourth Circuit has explained:

> [W]e have recognized two ways in which a State may waive its Eleventh
> Amendment immunity: (1) expressly in a state statute or constitutional provision,
> "as long as the provision explicitly specifies the state's intention to subject itself to
> suit in federal court," or (2) implicitly "by voluntarily participating in federal
> spending programs when Congress expresses a clear intent to condition
> participation in the programs . . . on a State's consent to waive its constitutional
> immunity."

Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 491 (4th Cir. 2005)

(alteration in original) (quoting Litman v. George Mason Univ., 186 F.3d 544, 550 (4th Cir. 1999)).

As to express waiver, North Carolina has neither waived its immunity to suit under § 1983, Mary's

House, Inc. v. N.C., 976 F. Supp. 2d 691, 697 (M.D.N.C. 2013), nor waived its immunity to suits

brought for intentional torts. See Guthrie v. N.C. State Ports Auth., 299 S.E.2d 618, 625 (N.C.

1983) (explaining that North Carolina has waived its immunity for negligent torts only); see also

Jolly v. Univ. of N.C. at Wilmington, No. 7:09-CV-136-BO, 2010 WL 2024094, at *2 (E.D.N.C.

May 19, 2010).

Here, Plaintiff's claims are brought pursuant to § 1983, § 1985, or North Carolina state

law. Plaintiff has not pointed to any state law or state constitutional provision indicating North

Carolina's express intention to subject itself to suit in federal court under any of the causes of

action asserted. And, to the extent Plaintiff argues North Carolina's acceptance of federal funds

from the Federal Highway Administration's ("FHA") DBE program constitutes waiver, Plaintiff's

argument fails. Plaintiff has failed to point to any "express and unequivocal" language stated in *any text of any statute* indicating Congress' intent to condition the receipt of FHA funds on waiving sovereign immunity. Accordingly, Plaintiff has not sufficiently alleged any facts that would allow this Court to conclude North Carolina has waived its immunity to suit for any of the causes of action Plaintiff asserts.

Second, Plaintiff argues Congress has abrogated immunity for "States receiving federal funds who violate the provisions of *any* anti-discrimination statute." (Doc. No. 27, p. 6) (emphasis added). Setting aside Plaintiff's failure to cite to any federal anti-discrimination statute as a possible source of abrogation in its Complaint or Response other than 49 C.F.R. § 26.5, Plaintiff's argument is incorrect.[9]

Congress may abrogate immunity when legislating pursuant to Section 5 of the Fourteenth Amendment in part because § 5 "expressly granted [Congress the] authority to enforce . . . the substantive provisions of the Fourteenth Amendment, which themselves embody significant limitations on state authority." Fitzpatrick v. Bitzer, 427 U.S. 445, 454-55 (1976). However, there is no similar express grant of authority found in 42 U.S.C. §§ 1983 and 1985. Quern, 440 U.S. at 345 ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the states; nor does it have a history . . . which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States."); see also Cribb v. Pelham, 552 F. Supp. 1217, 1220 (D.S.C. 1982) ("[T]he State . . . is [not] subject to suit under 42 U.S.C. § 1983 or 1985.").

---

[9] The Court is not convinced that 49 C.F.R. Part 26 is properly classified as an anti-discrimination statute as it governs the participation of Disadvantaged Business Enterprises in U.S. DOT financial assistance programs. See 49 C.F.R. Part 26.

Here, Plaintiff asserts only two causes of action pursuant to federal law: 42 U.S.C. § 1983 and § 1985, see (Doc. No. 7), and neither federal statute abrogates North Carolina's Eleventh Amendment immunity as a matter of law. The remaining causes of action are state law causes of action, and as discussed above, North Carolina has not waived its immunity for the state law causes of action asserted. Plaintiff's abrogation argument fails.

Third, Plaintiff argues Defendant Thaxton fits into the Ex parte Young exception to Eleventh Amendment immunity because Plaintiff is seeking an injunction enjoining Defendant Thaxton and the NCDOT from engaging in continuing constitutional violations.[10] (Doc. No. 27, p. 5).

"[T]he Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (internal citations omitted). "For purposes of Eleventh Amendment analysis, it is sufficient to determine that [the plaintiff] alleges facts that, if proven, would violate federal law and that the requested relief is prospective." S.C. Wildfire Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008). Notably, to ensure that a federal injunction against a state official would be effective, there must be "'some connection with the enforcement' of an unconstitutional act" and the official being sued. Id. at 333; see also Wright v. N.C., 787 F.3d 256, 262 (4th Cir. 2015) (quoting Ex parte Young, 209 U.S. 123, 157 (1908)). Thus, for an official "[t]o be amenable to suit under the Eleventh Amendment, there must be a 'special relation' between the state official being sued and the challenged action," which "requires '*proximity to* and *responsibility for* the challenged state action.'" Wright, 787 F.3d at 262 (emphasis in original) (quoting S.C. Wildfire Fed'n v. Limehouse, 549 F.3d 324, 333 (4th Cir. 2008)). A "special relationship" between the official sued

---

[10] The NCDOT is not named as a Defendant in this suit. However, as with Defendant Thaxton, a suit against the NCDOT is a suit against the State of North Carolina itself.

and the challenged action exists when the official has a "specific duty" to enforce the challenged provision. See S.C. Wildlife Fed'n, 549 F.3d at 333 (explaining that courts may look to both state and federal law to determine if there is a duty to enforce imposed on the relevant official).

Here, Plaintiff is ultimately alleging Defendant Thaxton violated federal anti-discrimination and procedural due process law by incorrectly communicating a statement of law to Plaintiff, thereby rendering "null" Plaintiff's status as a DBE, and by "removing Plaintiff's NCDOT designation to provide police protection on NCDOT Work Zones."[11] (Doc. No. 7, pp. 26, 28). The Court first notes it is not persuaded, even at this early stage in the litigation, that Defendant Thaxton's actions amount to a violation of federal law as alleged.

However, even if the Court were to accept as true the legal conclusion that Defendant Thaxton violated federal law by incorrectly interpreting and applying N.C. GEN. STAT. § 74E, Defendant Thaxton does not have the special relationship with § 74E necessary for this Court to entertain a suit seeking prospective relief.[12] First, Plaintiff has failed to provide any argument or legal authority sufficient to establish the existence of a special relationship between Defendant Thaxton and § 74E. See (Doc. No. 27). Second, after careful review of § 74E, it is the State Attorney General, not Defendant Thaxton—or anyone else in the NCDOT—who has the duty and power to enforce the Company Police Act. N.C. GEN. STAT. § 74E-4. Indeed, Plaintiff's own Amended Complaint makes clear Defendant Thaxton believed she was interpreting and applying the law as mandated by the NCDOJ, which is run by the Attorney General. (Doc. No. 7, p. 26). Accordingly, any injunction issued as to Defendant Thaxton would have *no effect* on the NCDOJ's

---

[11] It is unclear from the Amended Complaint whether the designation allegedly removed by Defendant Thaxton was Plaintiff's designation as a DBE or Plaintiff's designation as an authorized company police agency under N.C. GEN. STAT. § 74E. If the former, it is unclear that Defendant Thaxton would be able to remove a DBE designation as it is a federally-conferred, not state-conferred, designation.

[12] Plaintiff suggests Defendant Thaxton's allegedly unlawful actions stemmed from her incorrect interpretation and application of § 74E.

16

interpretation and application of § 74E and, the prospective relief sought against Defendant Thaxton, without more, does not invalidate Defendant Thaxton's Eleventh Amendment immunity.

In sum, the Eleventh Amendment insulates Defendant Thaxton from suit to the extent she is sued in her official capacity. None of the exceptions to the Eleventh Amendment—waiver; abrogation; and prospective, injunctive relief—are present here. Accordingly, all of Plaintiff's claims against Defendant, except the state constitutional claims, are barred by the Eleventh Amendment.[13]

### c. State Constitutional Claims

Defendant Thaxton moves to dismiss Plaintiff's alternative claims under the North Carolina Constitution because claims under the State constitution are only available when a plaintiff has no other adequate remedy under state law. (Doc. No. 24-2, p. 9). In response, Plaintiff argues its state constitutional claims are viable because there are no adequate remedies otherwise available under state law. (Doc. No. 27, p. 13).

Assuming *arguendo* Plaintiff is correct, and there are no adequate remedies under state law such that Plaintiff can assert claims under the State Constitution, Plaintiff has nonetheless failed to state any plausible constitutional claim. Plaintiff contends Defendants collectively deprived Plaintiff of the fruits of Plaintiff's labor, deprived Plaintiff of equal protection under the law, and created a monopoly in violation of the North Carolina Constitution's Declaration of Rights. (Doc. No. 7, pp. 35-36).

In construing the Amended Complaint in the light most favorable to Plaintiff and in accepting the factual allegations as true, the Amended Complaint is devoid of any allegations that would allow this Court to plausibly infer Plaintiff's rights have been violated. For example,

---

[13] As will be discussed below, the state constitutional claims are barred under Fed. R. Civ. P. 12(b)(6).

although Plaintiff states it is a Disadvantaged Business Enterprise, Plaintiff does not indicate what protected class it belongs to and fails to identify any comparators. Without knowing whether any comparators exist or the protected class Plaintiff belongs to, the Court cannot attempt to evaluate the merits of Plaintiff's equal protection claim. As to Plaintiff's "fruit of its labor" claim, Plaintiff fails to meet the minimal burden of even identifying the elements to state such claim.[14] As to Plaintiff's monopoly claim, Plaintiff's generalized and vague allegations of unfair, deceptive, and fraudulent acts committed by Defendant Thaxton are insufficient to establish any constitutional violation in North Carolina. See Sartori v. N.C. Dep't of Pub. Safety, 778 S.E.2d 476, 476 (table) (N.C. Ct. App. 2015). Ultimately, even if a claim under the North Carolina constitution were procedurally available to Plaintiff, Plaintiff has failed to allege facts sufficient to plausibly state any such claim. Defendant Thaxton is entitled to dismissal of the alternative constitutional claims against her.

In sum, all claims against Defendant Thaxton must be dismissed because of Eleventh Amendment immunity or because Plaintiff has failed to plausibly allege Defendant Thaxton violated any of Plaintiff's rights. Accordingly, Defendant Thaxton's Motion to Dismiss, (Doc. No. 24), is GRANTED.

## IV. DEFENDANTS TRANUM AND CSP'S MOTION TO DISMISS

In its Amended Complaint, Plaintiff alleges Defendants Tranum and his employer, CSP, are liable for conspiracy under state law and 42 U.S.C. § 1985; abuse of process; and for violations of North Carolina's Unfair and Deceptive Trade Practices Act ("NCUDTPA"). (Doc. No. 7).

---

[14] To state a "fruits of labor" claim under the North Carolina Constitution, a plaintiff must allege the following: "(1) a clear, established rule or policy existed regarding the employment promotional process that furthered a legitimate governmental interest; (2) the employer violated that policy; and (3) the plaintiff was injured as a result of that violation." Tully v. City of Wilmington, 810 S.E2d 208, 216 (N.C. 2018). Plaintiff is not employed by Defendant Thaxton, so cannot plausibly allege the first element.

18

Defendants Tranum and CSP move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 26). Plaintiff opposes dismissal of all claims except for the abuse of process claim, which Plaintiff concedes is not recognized under North Carolina law for the facts alleged here. (Doc. No. 28, p. 9). The Court accordingly dismisses Plaintiff's abuse of process claim, (Count Four), and evaluates Defendants Tranum and CSP's Motion to Dismiss the conspiracy and UDTPA claim, below.

### a. State Law and § 1985 Conspiracy

Defendants Tranum and CSP move to dismiss Plaintiff's state law and § 1985 conspiracy claims because Plaintiff has failed to allege any essential elements of a conspiracy claim, most notably the existence of an agreement, under both state and federal law. (Doc. No. 26, pp. 4-5). In response, Plaintiff argues it has sufficiently alleged a conspiracy, wrongful acts committed by Defendants in furtherance of the conspiracy, and injury to Plaintiff. (Doc. No. 28, pp. 6-7).

Whether alleged under state or federal law, civil conspiracy claims must include sufficient factual allegations of an "agreement between two or more individuals." Doe v. Lees-McRae Coll, No. 1:20-cv-105-MR, 2021 WL 2673050, at *3 (W.D.N.C. June 29, 2021) (explaining the requirements to state a claim for civil conspiracy under North Carolina state law); Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) ("[T]o prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants." (citations omitted)). Plaintiff here has completely failed to allege this most basic requirement of civil conspiracy. Indeed, the only use of the word "agreement," or any variation thereof, in the Amended Complaint is in reference to Plaintiff's contractual agreement with SCC or "employment agreements" in general. See (Doc. No. 7, pp. 2-3, 8-13, 20-21, 29). Contrary to Plaintiff's arguments, conclusory allegations of "conspiracy" are not enough to establish a claim for conspiracy—claims of conspiracy require

19

"concrete supporting facts," <u>Simmons</u>, 47 F.3d at 1377, and here, there are none. The allegations pertaining to conspiracy are so deficient and conclusory that the Court is concerned about the frivolity of asserting such claims. Defendants Tranum and CSP are accordingly entitled to dismissal of Plaintiff's state and federal conspiracy claims.

### b. UDTPA

Defendants Tranum and CSP argue Plaintiff has failed to state a UDTPA claim because Defendants Tranum and CSP's action were neither "in or affecting commerce" nor unfair and deceptive. (Doc. No. 26, pp. 8-9). In response, Plaintiff argues Defendants conduct affected commerce "in that they excluded Plaintiff from the market," and Defendant Tranum's conduct was unfair and deceptive because he emailed a "knowingly false complaint [which] had a massive trickle-down effect." (Doc. No. 28, pp. 9-10).

In North Carolina, "unfair methods of competition in or affecting commerce, and unfair and deceptive acts or practices in or affecting commerce, are . . . unlawful." N.C. GEN. STAT. § 75-1.1(a). Although the UDTPA's primary purpose is to protect consumers, it applies to certain business practices "in appropriate situations." <u>Dalton v. Camp</u>, 548 S.E.2d 704, 710 (N.C. 2001). To state a UDTPA claim, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." <u>Id.</u> at 711 (quotation omitted). Because a plaintiff must first "establish that [the] defendant['s] conduct was in or affecting commerce before the question of unfairness or deception arises," <u>HAJMM Co. v. House of Raeford Farms, Inc.</u>, 403 S.E.2d 483, 492 (N.C. 1991) (citation and quotation omitted), the Court focuses its analysis on the second element of a UDTPA claim—whether Defendants Tranum and CSP's actions were in or affecting commerce.

20

Plaintiff alleges Defendant Tranum violated the UDTPA when he sent one email to Defendant Munn alerting Defendant Munn that Plaintiff's patrol vehicles were operating blue lights potentially in violation of The Company Police Act.[15] (Doc. No. 7, p. 35). Plaintiff essentially argues this single action by Defendant Tranum has had a "massive trickle-down effect" in or affecting commerce, an argument which strains credulity, particularly when Plaintiff has provided no legal support for its assertion.

"To 'affect commerce,' a defendant's allegedly deceptive acts must have a tangible effect on the marketplace." In re Brokers, Inc., 396 B.R. 162 (Bankr. M.D.N.C. 2008) (quoting Esposito v. Talbert & Bright, Inc., 641 S.E.2d 695, 698 (N.C. 2007)). Plaintiff argues Defendant Tranum's email had a tangible effect on the marketplace because the email had the ultimate effect of "exclud[ing] Plaintiff from the market and forc[ing] developers and contractors to contract with off-duty municipal and county law enforcement officers to provide the services Plaintiff had been providing." (Doc. No. 28, p. 10). The number of assumptions the Court is required to make to logically connect Plaintiff's largely conclusory allegations to a valid UDTPA claim renders Plaintiff's claim implausible. For example, assuming Plaintiff *was* tangibly excluded from the marketplace, any such exclusion was the result of a temporary determination—made by the chief law enforcement agency in North Carolina—that *Plaintiff had violated the very law* allowing Plaintiff to participate in the marketplace in the first place. To conclude that a law enforcement action, resulting from an arguably erroneous interpretation of the law, can violate the UDTPA would lead to absurd results. Moreover, the connection between Defendant Tranum's single email and the NCDOJ's conclusion that Plaintiff violated the Company Police Act is too attenuated to

---

[15] The Court assumes Plaintiff attempts to hold Defendant CSP liable for Defendant Tranum's actions based on Defendant CSP and Defendant Tranum's employer/employee relationship.

plausibly allege Defendant Tranum is responsible for any potential UDTPA violation. Defendants Tranum and CSP are accordingly entitled to dismissal of Plaintiff's UDTPA claim.

For the foregoing reasons, Plaintiff has failed to state plausible claims against Defendants Tranum and CSP. Their Motion to Dismiss, (Doc. No. 25), is GRANTED.

## V.    DEFENDANTS MUNN, SQUIRES AND COMMISSION'S MOTION TO DISMISS

Defendants Munn, Squires, and Commission have filed three separate Motions to Dismiss; however, each motion is identical in substance and seek to dismiss Plaintiff's Amended Complaint in its entirety. (Doc. Nos. 35, 36, 37). The Court will accordingly treat the three motions as one for purposes of this Order.

The claims against Defendants Munn, Squires and Commission are barred by the Eleventh Amendment for the same reasons described above with respect to Defendant Thaxton.[16] The Court acknowledges Plaintiff has asserted claims against Defendants Munn, Squires, and Commission not asserted against Defendant Thaxton: tortious interference with contract and fraud. (Doc. No. 7, pp. 33-34). However, both are intentional torts and North Carolina has not waived immunity for such claims. See Guthrie, 299 S.E.2d at 625.  To the extent any claim against Defendants Munn, Squires and Commission is not barred by the Eleventh Amendment, namely the alternative state constitutional claims, Plaintiff fails to state a claim, again for the same reasons as described above with respect to Defendant Thaxton. Because all claims against Defendants Munn, Squires, and Commission either fail because of sovereign immunity or because Plaintiff has failed to meet its pleading standard, Defendants Munn, Squires, and Commission are entitled to dismissal.[17]

---

[16] As with Defendant Thaxton, Plaintiff alleges Defendants Munn and Squires are sued in their individual capacities; however, as with Defendant Thaxton, every allegation as to Defendants Munn and Squires encompass actions taken only within their official capacity as officials within the NCDOJ. See (Doc. No. 7). Defendant Commission is a Commission established by the North Carolina General Assembly and is an occupational licensing agency under N.C. GEN. STAT. § 150B-2(4b). See also N.C. GEN. STAT. Chapter 17C.

[17] Although not addressed herein, Defendants Munn, Squires, and Commission move for dismissal on a number of bases, including issue and claim preclusion. (Doc. No. 37-1, p. 11). Defendants point out, and Plaintiff does not

22

## VI. CONCLUSION

IT IS THEREFORE ORDERED that each Defendant's Motion to Dismiss, (Doc. Nos. 24, 25, 35, 36, 37), is GRANTED. Plaintiff's Amended Complaint is DIMISSED WITH PREJUDICE as to all Defendants. The Clerk of Court is respectfully directed to CLOSE this case.

IT IS SO ORDERED.

Signed: August 10, 2021

Frank D. Whitney
United States District Judge

---

dispute, this matter in this Court represents at least the *third* time Plaintiff has attempted to litigate the ultimate issue in this case: whether Plaintiff was unlawfully prevented from providing contract law enforcement services on the I-77 project. Id. at p. 12. Without evaluating the merits of preclusion, the Court notes it is concerned with the appearance of impropriety in filing this matter, which is premised on the *exact same nexus of operative facts* as at least one other case in which the North Carolina Court of Appeals affirmed dismissal of Keith Williams', Plaintiff's CEO, case against NCDOJ. Williams v. N.C. Dep't of Just., Crim. Standards Div., 848 S.E.2d 231 (N.C. Ct. App. 2020).

23